**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **LEO RIOT, as Trustee and Trust** | § | |
| **Administrator, on behalf of QUASAR** | § | |
| **SPENDTHRIFT TRUST,** | § | |
|     *Plaintiff,* | § | **CIVIL CASE NO.** |
| | § | 1:24-cv-1557 |
| **v.** | § | **JURY DEMANDED** |
| | § | |
| **APEX TRADER FUNDING INC.,** | § | |
| **domestic for-profit corporation;** | § | |
| **DARRELL ROLAND MARTIN,** | § | |
| **ANTHONY TODD JOHNSON, BRYAN** | § | |
| **WIRTH, and JOHN MARK SKELTON,** | § | |
| **individually,** | § | |
|     *Defendants.* | § | |

---

**PLAINTIFF LEO RIOT, AS TRUSTEE AND TRUST ADMINISTRATOR, ON
BEHALF OF QUASAR SPENDTHRIFT TRUST'S ORIGINAL COMPLAINT**

---

**TO THE HONORABLE COURT:**

    **COMES NOW, PLAINTIFF, LEO RIOT, AS TRUSTEE AND TRUST
ADMINISTRATOR, ON BEHALF OF QUASAR SPENDTHRIFT TRUST**, in the above-
styled matter and files this *Plaintiff Leo Riot, as Trustee and Trust Administrator, on behalf of
Quasar Spendthrift Trust's Original Complaint* (**"Complaint"**) complaining of **DEFENDANTS,
APEX TRADER FUNDING INC., DARRELL ROLAND MARTIN, ANTHONY TODD
JOHNSON, BRYAN WIRTH, and JOHN MARK SKELTON** and for cause of action
respectfully shows the Court as follows:

**I.    PARTIES**

1.    Plaintiff Leo Riot, as Trustee and Trust Administrator, on behalf of Quasar Spendthrift
Trust (**"Plaintiff," "Mr. Riot"** or **"QST"**) is an irrevocable trust originally formed in Texas.

2.      Defendant Apex Trader Funding Inc. (**"Defendant"** or **"Apex"**) is a domestic for-profit corporation organized and existing under the laws of the State of Texas, with its main office at 2028 E. Ben White Blvd., Ste. 240-9873, Austin, Texas 78741. The officers of Apex are, upon information and belief, citizens of the State of Texas. The known officers of Apex are Darrell Roland Martin, Anthony Todd Johnson, John Mark Skelton, Bryan Wirth, Cris Manning, and James Mannering. Defendant may be served with process through its registered agent, United States Corporation Agents, Inc., 10601 Clarence Dr. Suite 250 Frisco, Texas 75033.

3.      Defendant Darrell Roland Martin (collectively, **"Defendants"** or **"Mr. Martin"**), an individual, may be served with process at his usual place of abode at 2569 Hwy 111, Boyd, Texas 76023, or wherever else he may lawfully be found.

4.      Defendant Anthony Todd Johnson (collectively, **"Defendants"** or **"Mr. Johnson"**), an individual, may be served with process at his usual place of abode at 2028 E. Ben White Blvd. Suite 240-9873, Austin, Texas 78741, or wherever else he may lawfully be found.

5.      Defendant Bryan Wirth (collectively, **"Defendants"** or **"Mr. Wirth"**), an individual, may be served with process at his usual place of abode at 12716 Capella Trail, Austin, Texas 78732-2396, or wherever else he may lawfully be found.

6.      Defendant John Mark Skelton (collectively, **"Defendants"** or **"Mr. Skelton"**), an individual, may be served with process at his usual place of abode at 13 Byron Nelson, San Antonio, Texas 78257, or wherever else he may lawfully be found.

## II.      JURISDICTION AND VENUE

7.      This action arises under the Constitution and the laws of the United States; therefore, jurisdiction is conferred by 28 U.S.C. § 1331, 18 U.S.C. § 1836, and 17 U.S.C. § 501 et seq.

8.      This Court has specific personal jurisdiction over Defendants because Defendants have sufficient minimum contacts with Texas, have purposely availed themselves of the benefits and protection of Texas law, and do a substantial amount of business in Texas such that the Court's exercise of personal jurisdiction accords with due process.

9.      Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims in this Complaint occurred in this District and because Defendants are subject to the Court's personal jurisdiction with respect to this action. *See also* TEX. CIV. PRAC. & REM. CODE § 15.002.

10.     Venue is proper to pursue damages for Theft of Trade Secrets under the Texas Penal Code pursuant to the TEX. CIV. PRAC. & REM. CODE, § 134.004.

11.     Venue is proper in this District because it is where Mr. Martin, Mr. Johnson, Mr. Wirth, and Mr. Skelton reside and the location of Apex's principal place of business; therefore, this is where its agent may be found. 28 U.S.C. § 1400(a); TEX. CIV. PRAC. & REM. CODE § 65.023(a).

### III.    OPERATIVE FACTUAL BACKGROUND

12.     Mr. Martin is the founder and Chief Executive Officer (**"CEO"**) of Apex. QST entered into a Software License Agreement (**"Agreement"**) with Apex on or about July 12, 2024. The Parties mutually signed the Agreement and formed a valid and legally enforceable contract subject to the terms and conditions found within the four corners of the document. **Exhibit A**, Software License Agreement. The Agreement was signed by Mr. Martin on behalf of Apex, in his stated capacity as CEO of Apex. *Id,* p. 14.

13.     Sometime after December 2021, Mr. Martin informally stepped down from his position as CEO in favor of allowing Chief Operations Officer (**"COO"**), Mr. Skelton, to assume operational control of Apex. **Exhibit B**, Affidavit of Leo Riot, ¶ 5. Mr. Skelton has largely functioned as CEO

of Apex, along with Mr. Martin, since that time. *Id.* Therefore, upon information and belief, Mr. Skelton has been a participant in and responsible for Apex's actions since early 2022.

14.     On June 22, 2023, Mr. Skelton hired Mr. Johnson as Advisor and Chief of Staff for Apex, despite Mr. Johnson having previously been barred from associating with any broker, dealer, or investment advisor by the Securities and Exchange Commission. *See* Anthony Todd Johnson, Release No. 91020 (S.E.C. Jan. 29, 2021). Ex. B, ¶ 28, Ex. B-2.

15.     Upon information and belief, Mr. Johnson was hired with the express purpose of developing a relationship with Mr. Riot to gain access to QST's proprietary code. Mr. Johnson was excessively complimentary toward Mr. Riot and he would casually mention that he knows the best programmers in the country who could come and assist Mr. Riot, "but they need access to the code." Ex. B, ¶ 29.

16.     Defendants hired Mr. Wirth as Chief Technology Officer (**"CTO"**) on May 15, 2024. Based on phone conversations in which Mr. Martin told Mr. Riot that he found the most experienced programmer to take over the IT department after Mr. Riot's departure, upon information and belief, Mr. Wirth was responsible for reverse engineering QST's proprietary software. Ex. B, ¶ 30.

17.     The subject of the Agreement is the "Funding Program Automation Engine" (**"Software"**), developed by QST. Ex. A, pp. 1, 2. QST spent a considerable amount of time, money, and effort creating and refining the Software. Ex. B, ¶ 8.

18.     QST owns multiple copyright registrations for versions of the Software, including Reg. No. TXu002353967, dated January 9, 2023, Reg. No. TXu002436130, dated June 17, 2024, Reg. No. TXu002437976, dated June 19, 2024, and Reg. No. TXu002455704, dated November 4, 2024, (**"Copyrighted Works"** or **"Copyrighted Material"**). *Id*, ¶ 9.

19.    In addition to QST's copyright registrations, components of the Software have not been registered or publicly disclosed and contain valuable trade secrets. *Id*, ¶ 10.

20.    The Agreement contains extensive language regarding trade secret protections and copyright-based use restrictions, including Section 2.6: "Use Restrictions," Section 8: "Title, Intellectual Property Rights, and Infringement," Section 9: "Security Measure Disclosure" and Section 10: "Confidentiality/" Ex. A, pp. 3, 6, 7.

21.    Section 2.6: "Use Restrictions" places a duty on Apex that it "shall not at any time, directly or indirectly: (i) copy, modify, or create derivative works of the Software, in whole or in part; (ii) rent, lease, sell, sublicense, assign, distribute, transfer, or otherwise make available the Software; (iii) reverse engineer, disassemble, decompile, decode, adapt, or otherwise attempt to derive or gain access to the source code of the Software, in whole or in part; or (iv) use the Software in any manner or for any purpose that infringes, misappropriates, or otherwise violates any intellectual property right or other right of any person, or that violates any applicable law." Ex. A, p. 3, § 2.6.

22.    Section 8: "Title, Intellectual Property Rights, and Infringement" clearly establishes that QST is the sole owner of the Software, and that "Nothing in this License Agreement grants any implied rights to LICENSEE, including by implication, waiver, or estoppel, in any Intellectual Property Rights or other rights, title, or interest in any portion of the Licensed Software and Documentation…"  Ex. A, pp. 6-7, § 8. Section 8 further places a duty on Apex to "secure and protect the Licensed Software and Documentation from infringement, misappropriation, misuse, theft, or other unauthorized access through all commercially reasonable measures and precautions similar to those LICENSEE would employ to secure and protect its own intellectual property…" *Id*.

PLAINTIFF'S ORIGINAL COMPLAINT

23.    Section 9: "Security Measure Disclosure" describes the security features QST built into the Software to detect and prevent unauthorized use by any third parties, including Apex. Ex. A, pp. 7, § 9.

24.    Section 10: "Confidentiality" delineates the substantial restrictions on disclosure of confidential information, which is defined to include trade secret components of the Software per Section 1.2. Ex. A, pp. 7-8, § 10. These restrictions include clear limitations on which individuals may receive confidential information and place a duty on Apex to "use, at minimum, the same degree of care that recipient uses to protect its own similarly sensitive information, and no less than a generally commercially reasonable degree of care, to secure and protect Confidential Information from unauthorized use, access, or disclosure…" *Id*. Section 10.4 specifically obligates Apex to "protect any Confidential Information that constitutes as trade secrets under any applicable Law until such Confidential Information ceases to qualify for trade secret protection by operation of Law." *Id*.

25.    After signing the Agreement, QST performed its duty by rendering services under the contract; QST provided Defendants access to the Software for Apex's use as agreed. Ex. B, ¶ 13.

26.    Section 5: "Fees and Taxes" and Section 6: "Payment" require that Apex pay QST thirty-three percent (33%) of its net profits on the fifth day of each month. Ex. A, pp. 4-5, §§ 5, 6.

27.    For the month of July 2024, following the Parties' execution of the Agreement on July 12, 2024, Apex reported a net profit for the remainder of July of $13,116,555.00. Ex. B, ¶ 15. If these numbers were correct, per the terms of the Agreement, QST was entitled to payment in the amount of at least $4,328,463.15 on August 5, 2024. However, Defendants failed to fulfill their obligations under the Agreement by not providing the appropriate monthly payment. *Id*, ¶ 16.

28.     For the month of August 2024, Apex reported a net profit of $17,093,970.00. *Id*, ¶ 17. If these numbers were correct, per the terms of the Agreement, QST was entitled to payment in the amount of at least $5,641,010.10 on September 5, 2024; however, Defendants failed to fulfill their obligations under the Agreement by not providing the appropriate monthly payment. *Id*, ¶ 18.

29.     For the month of September 2024, Apex reported a net profit of $9,221,778.00. If these numbers were correct, per the terms of the Agreement, QST was entitled to payment in the amount of at least $3,043,186.74 on October 5, 2024. *Id*, ¶ 19. However, Defendants failed to fulfill their obligations under the Agreement by not providing the appropriate monthly payment. *Id*, ¶ 20.

30.     On September 27, 2024, QST notified Apex and Mr. Martin of the missed payment and demanded immediate payment with accrued interest, per the Late Payment terms in Section 6: Payment. **Exhibit C**, Demand Letter; Ex. A, p. 5, § 6.

31.     Defendants nonetheless took no action to resolve the delinquency. Ex. B, ¶ 22. Therefore, on October 28, 2024, QST gave Apex and Mr. Martin notice that the Apex license was revoked, and the Agreement was terminated. **Exhibit D**, Termination Letter; Ex. A, p. 9, §§ 11.1, 12.1.

32.     While QST terminated the Agreement on October 28, 2024, QST is still owed its license fee for the month of October prior to the termination date, and Section 12.2 of the Agreement makes all outstanding payments due and payable immediately upon termination. Ex. A, p. 9. For the period of October 1 to October 28, 2024, Apex reported a net profit of $15,718,500.00. Ex. B, ¶ 24. If these numbers were correct, per the terms of the Agreement, QST was entitled to payment in the amount of at least $5,187,105.00 on the date of termination. However, Defendants failed to fulfill their obligations under the Agreement by not providing the appropriate final payment. *Id*, ¶ 25.

33.    Despite the clear license revocation and termination of the Agreement, Defendants continue to use QST's software, including its trade secrets and Copyrighted Material, and receive revenue from the use of the software in its business practices. *Id*, ¶ 31.

34.    When Mr. Riot developed the Software, he added the label prefix "alrs" that would appear in a website URL when the Software was being used on a website. On December 16, 2024, Mr. Riot became aware of a website using several components of the Software on multiple pages and in multiple ways, as indicated by the "alrs" prefix in the respective sub-page URLs. *Id*, ¶ 32; Ex. B-3. This means that not only have Defendants continued to use the Software after Plaintiff terminated the Agreement, but they have also distributed it. Ex. B, ¶¶ 31, 33.

35.    In addition to failing to pay as promised, Defendants breached their duty under the agreement by continuing to use the software, misappropriating QST's trade secrets and infringing on its copyright registrations in the Software. Defendants further took steps to reverse engineer and copy the software. *Id.*

36.    The Defendants' actions in their efforts to reverse engineer, copy, or access the Software have irreparably harmed and continue to irreparably harm QST. *Id*, ¶¶ 31, 33.

## IV.    CAUSES OF ACTIONS

### A.    Copyright Infringement (17 U.S.C. § 501 et seq.)

37.    Mr. Riot realleges each and every fact set forth above as if fully set forth herein.

38.    Upon information and belief, Defendants used and copied QST Copyrighted Works without QST's permission.

39.    Upon information and belief, all Defendants' unauthorized use of the QST Copyrighted Works was done so that Defendants would be able to take, for their own profit and advantage, the QST Copyrighted Works.

40.    Upon information and belief, all Defendants induced, participated, and aided and abetted in, and profited from, the use and copying of the QST Copyrighted Works.

41.    By reason of the foregoing use and copying, all Defendants used, copied or aided and assisted in the use and copying of the QST Copyrighted Works without permission of QST, which is an infringement of QST's copyrights.

42.    In stealing the QST Copyrighted Works, the Defendants willfully and intentionally sought to appropriate QST's hard work and significant financial investment in the intellectual property for their own profit without bearing the cost of developing or purchasing their own work product.

43.    QST has suffered actual damages as a direct and proximate result of Defendants' wrongful actions set forth herein. QST seeks recovery of all profits of Defendants plus all losses of QST, the exact sum to be proven at the time of trial.

44.    As a probable and foreseeable consequence of Defendants' theft of QST's Copyrighted Material, QST has suffered significant damages, including the lost value of the stolen material, lost profits, and the impairment of QST's future earning capacity and goodwill. Ex. B, ¶ 29. As a further probable and foreseeable consequence of Apex's theft of Copyrighted Material, QST will continue to suffer such significant damages. Defendants are therefore liable for these damages.

45.    QST also seeks the recovery of its attorneys' fees and costs in pursuing this action against Defendants as authorized in 17 U.S.C. § 505.

46.    In the alternative, at the election of QST, at the time of trial, it is entitled to recover from Defendants statutory damages as set forth in 17 U.S.C. § 504 of up to $150,000.00 per copyright infringed for Defendants' willful copyright infringement, plus attorneys' fees and costs.

**B.    Violation of Defend Trade Secrets Act**

47.    Mr. Riot realleges each and every fact set forth above as if fully set forth herein.

48.    Plaintiff brings this action under the Defend Trade Secrets Act ("**DTSA**"), 18 U.S.C. 1836.

49.    QST has trade secrets in the form of certain contents of the Software. Which trade secrets QST has taken reasonable measures to keep secret. Ex. B, ¶ 10. The trade secrets derive independent economic value from not being generally known to and not readily ascertainable by the public or any unauthorized person through proper means. *Id*, ¶ 11. Upon information and belief, Defendants have obtained economic value from QSTs trade secrets.

50.    Because the license was revoked, Defendants know that they do not have authorization to possess, access, or use the trade secrets. Ex. D.  Defendants' actions constitute misappropriation. Further, under the Agreement, Defendants are prohibited from any sort of reverse-engineering activity related to the Software and the trade secrets it contains. Ex. A, p. 3, § 2.6, pp. 7-8, § 10.

51.    The QST's confidential information constitutes trade secrets related to the Software which is used in interstate commerce. Ex. B, ¶ 11. QST developed such information over significant time and expense. *Id.*, ¶ 8.

52.    All Defendants, by blocking and prohibiting QST's access to such information, have acquired, threatened disclosure of, and utilized QST's trade secrets without proper consent and for their own personal gain to the detriment of QST.

53.    As a probable and foreseeable consequence of Defendants' theft of trade secrets, QST has suffered significant damages, including the lost value of the misappropriated information, lost profits, and the impairment of QST's future earning capacity and goodwill. Ex. B, ¶ 29. As a further probable and foreseeable consequence of Apex's theft of trade secrets, QST will continue to suffer such significant damages. Defendants are therefore liable for these damages.

**C.    Violations of the Texas Uniform Trade Secrets Act**

54.    Mr. Riot realleges each and every fact set forth above as if fully set forth herein.

55.    Defendants have misappropriated QST's trade secrets without QST's consent. Although QST provided them its proprietary and trade secret Software, Defendants failed to make appropriate payments under the Agreement. Ex. B, ¶¶ 14, 16, 18, 20, 25. Therefore, Apex no longer has a license to use the Software and/or any trade secrets it contains. Ex. D.  Despite this, Defendants continue to use the Software and its associated trade secrets.

56.    The foregoing acts constitute misappropriation of QST's trade secrets under the Texas Uniform Trade Secret Act (**"TUTSA"**), TEX. CIV. PRAC. & REM. CODE § 134A.

57.    As a probable and foreseeable consequence of Defendants' theft of trade secrets, QST has suffered significant damages, including the lost value of the misappropriated information, lost profits, and the impairment of QST's future earning capacity and goodwill. Ex. B, ¶ 34. As a further probable and foreseeable consequence of Apex's theft of trade secrets, QST will continue to suffer such significant damages.

58.    Plaintiff seeks exemplary damages against Defendants for the willful, fraudulent, and malicious misappropriation of QST's trade secrets, as allowed under § 134A.004 of the TEX. CIV. PRAC. & REM. CODE.

**D.    Violation of Texas Theft of Trade Secrets Act**

59.    Mr. Riot realleges each and every fact set forth above as if fully set forth herein.

60.    Plaintiff can recover damages for Defendants' violation of the Texas Theft of Trade Secrets Act, TEX. PENAL CODE § 31.05, pursuant to Texas Theft Liability Act § 134.003.

61.    Defendants have knowingly stolen QST's trade secrets. Apex was informed in the Agreement and agreed that the Software was a trade secret, and that Defendants did not have QST's consent to make any copies, make efforts to manipulate the software, or seek to gain access to its source code through reverse engineering or any other means. Ex. A, p. 3, § 2.6.

62.     Appropriation of property, including trade secrets is unlawful if it is without the owner's effective consent. TEX. PENAL CODE §§ 31.03(b)(1), 31.05(b)(1).

63.     Upon information and belief, Defendants took deliberate efforts and actions to copy and reverse engineer the Software even though they were aware and had agreed that the Software comprised trade secrets owned by QST. They had further agreed not to take such efforts and actions. Ex. A, p. 3, § 2.6. Upon information and belief, Defendants took these actions with the intention of stealing the trade secrets held by QST and in direct violation of the contract.

64.     Upon information and belief, Defendants communicated or transmitted QST's trade secrets by allowing unauthorized parties to access the information. Defendants also attempted to isolate the software from QST by changing the access credentials on the server QST used to host the Software. Ex. B, ¶ 27.

65.     The foregoing acts constitute misappropriation of QST's trade secrets under TEX. PENAL CODE § 31.05, Theft of Trade Secrets.

66.     As a probable and foreseeable consequence of Defendants' theft of trade secrets, QST has suffered significant damages, including the lost value of the misappropriated information, lost profits, and the impairment of QST's future earning capacity and goodwill. Ex. B, ¶ 29. As a further probable and foreseeable consequence of Apex's theft of trade secrets, QST will continue to suffer such significant damages. Defendants are therefore liable for these damages. TEX. CIV. PRAC. & REM. CODE § 134.003(a).

**E.     Unjust Enrichment**

67.     Mr. Riot realleges each and every fact set forth above as if fully set forth herein.

68.     Pleading in addition to other counts, Plaintiff hereby alleges Defendants have been unjustly enriched.

69.     Upon information belief, Defendants have been unjustly enriched by receiving the benefit of the Software containing trade secrets and copyright protected information to which they are not entitled.

70.     Defendants' use of the Software, its trade secrets, and copyrighted information has been to the detriment of QST.

71.     As a result of Defendants' unauthorized use and enjoyment of QST's Software, trade secrets and Copyrighted Material, QST has suffered damages.

72.     As a probable and foreseeable consequence of Defendants' unauthorized use and enjoyment of QST's Software, trade secrets and Copyrighted Material, QST has suffered significant damages, including the lost value of the misappropriated and stolen information, lost profits, and the impairment of QST's future earning capacity and goodwill. Ex. B, ¶ 29. As a further probable and foreseeable consequence of Apex's theft of trade secrets, QST will continue to suffer such significant damages. Defendants are therefore liable for these damages.

## V.     PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

73.     In a companion filing, Plaintiff seeks preliminary and permanent injunctive relief against the Defendants.

## VI.     PLAINTIFF'S INJURIES AND DAMAGES

74.     QST has been and will continue to be damaged and injured by Defendants' conduct by loss of customers, loss of goodwill, and the loss of, and permanent injury to, the value of the trade secrets contained in the Software. This is in addition to the actual damages suffered by QST.  Due to Defendants' willful and malicious misappropriation, Plaintiff is entitled to exemplary damages. QST has further been damaged by Defendants' infringement of its Copyrighted Material.

Defendants' wrongful actions have caused QST damages in an amount within the jurisdictional limits of the court.

## VII.    ATTORNEY FEES

75.    Defendants' conduct as described in this Complaint and the resulting damage and loss to QST has necessitated Plaintiff's retention of the attorneys whose names are subscribed to this Complaint.

76.    Pursuant to 17 U.S.C. § 505, the court may award recovery of full costs and, in addition, attorney fees to the prevailing party as part of those costs.

77.    Pursuant to 18 U.S.C. § 1836(b)(3)(B)(D), Plaintiff is entitled to his reasonable attorneys' fees because Defendants' misappropriation of trade secrets was willful and malicious

78.    Pursuant to § 134A.005(3) of the Texas Civil Practice and Remedies Code, Plaintiff is entitled to his reasonable attorneys' fees because Defendants' misappropriation of trade secrets was willful and malicious.

## VIII.    JURY DEMAND

79.    Mr. Riot makes this demand for jury trial in the above-styled and numbered cause in accordance with Rule 38 of the Federal Rules of Civil Procedure.

## IX.    PRAYER

**WHEREFORE**, Plaintiff requests that Defendants be cited to appear and answer, and respectfully prays for the following relief:

a.    Upon final trial, judgment against Defendants for full permanent injunctive relief, and for the full amount of Plaintiff's actual damages including, but not limited to, lost profits, and exemplary damages as found by the trier of fact as a consequence of the Defendants' conduct;

b.   Plaintiff's reasonable and necessary attorneys' fees in prosecuting its claims through

     trial and, if necessary, through appeal;

c.   Pre-judgment and post-judgment interest as provided by law and costs of suit;

d.   All other relief to which Plaintiff's may show itself entitled, either at law or in equity,

     either general or special, under the facts set forth in its claims.


DATED: December 18, 2024                    Respectfully submitted,

                                           By: /s/ Elizabeth Revere
                                           ELIZABETH REVERE
                                           WD and State Bar No. 00791513
                                           LLOYD & MOUSILLI, PLLC
                                           11807 Westheimer Road
                                           Suite 550 PMB 944
                                           Houston, TX 77077
                                           Tel: (512) 609-0059
                                           Fax: (281) 783-8565
                                           *disputes@lloydmousilli.com*
                                           **ATTORNEYS FOR PLAINTIFF**